SOLEDAD LLORENS TORRES ET AL., Plaintiffs and Appellants, *v.* JUAN ARBONA REYNES ET AL., Defendants and Appellees.

No. 8298. Argued June 9, 1942.—Decided January 20, 1943.

*Luis Llorens Torres* for appellants. *E. T. Fiddler, H. S. McConnell,* and *José E. González* for appellees.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

The sisters, Soledad and Severiana Llorens Torres, filed a petition for an injunction (*interdicto*) to recover possession of "Hacienda Soledad" against Don Juan Arbona Reynes, on May 14, 1937. They alleged that on June 13, 1936, and for several years prior thereto, they were quietly and peaceably in possession of the property wherein they have their homestead; that on June 13, 1936, they were deprived of that possession, which deprivation first occurred on May 22, 1936, and subsequently, on June 13 of the same year, while said plaintiffs were staying temporarily in the city of Ponce;

that the act of deprivation was performed by the Marshal of the District Court of Ponce and by Mr. Ramiro Lázaro, who acted on behalf of the defendant, Juan Arbona Reynes, without the consent and against the will of the plaintiffs; and lastly, that at the time of the filing of the complaint, Juan Arbona Reynes was in possession of the property described in the complaint.

The defendant Arbona answered and denied that on the dates mentioned in the complaint the plaintiffs were in possession of the property or that they had been deprived of any possession whatsoever. He alleges, on the contrary, that the plaintiffs resided in the city of Ponce and that they had no homestead in "Hacienda Soledad," and moreover that the Marshal of the District Court of Ponce, José R. Rodrí- guez, placed him in posession of the property, subject of this action, but that said possession was not delivered to him against the will of the plaintiffs nor by means of deprivation, violence, or any force whatsoever.

As special defenses he alleged that he had acquired possession of the above-mentioned property by purchase from the National City Bank of New York, which had in turn acquired the same and possession thereof by adjudication at the public sales of May 22, 1936, in two mortgage foreclosure proceedings instituted by said bank against Tiburcio Llorens Torres *et al.;* and furthermore, that he gained possession of the property described in the complaint, peaceably and without the objection of any person whatsoever.

The facts proved at the hearing in the district court are as follows:

Plaintiffs Soledad and Severiana and their sister Gregoria, and their brothers, Tiburcio and Luis Llorens Torres, and Don Luis Llorens Echevarría, father of the latter, were co-owners of "Hacienda Soledad." At different times they mortgaged their undivided interests for $5,000 and $8,000 and these mortgages were later assigned to the National City

Bank of New York. After both credits became due, the bank instituted two mortgage foreclosure proceedings, one against the brothers Llorens Torres and another against them and the wives of Tiburcio and Luis. Upon the expiration of the thirty days after the demand for payment made on the defendants, the undivided interests were sold at public auction on March 4 and May 22, 1936, respectively. The mortgaged interests were adjudicated to the bank, and the Marshal on those same dates, executed the corresponding deeds of judicial sales.

On May 23, 1936, the Marshal of the District Court of Ponce went together with Mr. Ramiro Lázaro, Manager of the National City Bank of New York, to the farm and notified the croppers living there, that the farm had been adjudicated to the bank, but he did not give material possession thereof to Mr. Lázaro.

On June 13, 1936, the Marshal, at the request of the bank, again went to the farm and, after forcing the door of the dwelling of the plaintiffs, took the furniture out and sent it in a truck to another property of Don Tiburcio Llorens. On the afternoon of that day the Marshal gave possession of the farm, by order of Mr. Lázaro of the National City Bank, to Juan Arbona Reynes, defendant herein, who was already in possession of part thereof from a previous date.

In the orders issued by the court in the mortgage foreclosure proceedings, Nos. 9382 and 9383, after directing that "payment be demanded from the defendants of the capital and interest accrued," the following was stated:

". . . advising them that if they should fail to make said payments within the fixed period of thirty days, the mortgaged properties described in the original petition shall be sold at public sale, and with the proceeds thereof payment shall be made for said obligations in the manner prescribed by the law relating to satisfying judgments which are rendered in special proceedings to collect mortgages, and notices of this proceeding shall be served on the People of Puerto Rico, which holds liens on the properties foreclosed herein

subsequent (*sic*) to the mortgaged credit of the plaintiff, pursuant to subdivision 5 of §171, of the Regulations for the Mortgage Law."

Subsequent to the hearing of the case, the plaintiffs filed a complementary complaint, designating G. Llinás & Co., *S. en C.*, as party defendant and alleged, among other things, that said partnership had acquired from co-defendant Arbona, during the pendency of the suit and with knowledge thereof, a portion of the property, which is the subject of this suit.

The co-defendant partnership, as well as co-defendant Juan Arbona Reynes, answered, setting up more or less the same allegations contained in the answer to the original complaint, it being further alleged by G. Llinás & Co., *S. en C.*, that it was a third party because it purchased from a person who had a title recorded in the registry of property without any defect or *lis pendens.*

The parties agreed to submit the complementary complaint and answers thereto on the same evidence introduced at the preceding hearing.

The District Court of Ponce, on November 3, 1938, rendered judgment dismissing the original and the complementary complaint, with costs. The plaintiffs have appealed.

Of the various legal questions raised by the eight assignments of error, only two merit consideration. They are as follows:

1. Were the plaintiffs and appellants in possession of the property during the year preceding the date on which the complaint was filed?

2. Was the Marshal of the lower court empowered and authorized to enter the property of the plaintiffs, eject the latter from the property, and deliver possession to the defendant?

The first question was considered and decided by the lower court as follows:

"The principal question, the issue, to be decided in this case, is whether or not the plaintiffs were in possession of 'Hacienda Soledad'

during the year preceding the filing of the complaint and whether they were illegally deprived of said possession by co-defendant, Juan Arbona Reynes. The difficulty which the court finds in deciding this question arises from the contradictory evidence of plaintiffs themselves. It appears therefrom, that although the plaintiffs went to the property and had a man named Dávila in charge, it is also a proved fact that for several days prior to June 13, 1936, on which day the marshal went to deliver possession to the bank, the defendant herein, Juan Arbona Reynes, was already there in possession of the property or a part thereof. *The plaintiffs do not complain of this former possession held by Arbona but of the specific possession held on June 13 and thereafter.* If Arbona was already in possession, how could he have deprived the plaintiffs thereof on a previous date?

"From the stenographic record we take the following extract of the testimony of plaintiffs' witness, Rafael Angel Dávila. Direct examination, p. 36:

" 'Who is actually in possession of that property?

" 'At present, that property, according to what I hear . . .

" 'No, no, no, not according to what you hear. Who is in possession thereof now?

" 'At present, don Juan Arbona Reynes.

" 'He is now in possession thereof?

" 'Yes, sir.

" 'Since when?

" '*For six or seven days prior to June 13.*

" 'Did you say that don Juan Arbona Reynes was in possession of that property for some days prior to June 13, 1936?

" 'Yes, sir.

" 'Was he in possession of the property?

" 'Yes, sir.'

" Therefore, when the Marshal went there on June 13, 1936, don Juan Arbona was already in possession of the property?

" 'Of part of the property, because as I understand it, the former owners had to agree that don Juan Arbona Reynes should take possession of that property but don Juan Arbona Reynes did not go to take possession of the property, instead he began to work on the upper fields; he entered without any permission; he entered by 'Las Papas,' one of the upper fields.

" 'Therefore, on June 13 don Juan Arbona was already in possession of at least part of the Soledad farm?

" 'Yes.'

"So that, independently of whether the Marshal had a legal and valid order from the court to deliver possession to the bank on June 13, 1936, the evidence for the plaintiffs shows that co-defendant Juan Arbona Reynes had for several days previously been in possession of the property or part thereof and was working in some of the fields thereof without any objection on the part of the plaintiffs or of their employees. Furthermore, the evidence shows that when the Marshal went to the property on the morning of June 13, 1936, co-defendant Juan Arbona Reynes was not there and took no part at all in the removal of the furniture from the house which was the only thing that the Marshal did and that it was not until the afternoon of that same day that said officer, by virtue of an order from the bank and after the unlawful detainer, gave possession to Mr. Arbona. From the stenographic record it appears that the Marshal, Mr. Rodríguez, testified on cross-examination as follows (pp. 49 and 50):

" 'On June 13, 1936, were you at Hacienda Soledad in the ward of Collores, Juana Díaz?

" 'Yes, sir.

" 'With whom did you go?

" 'With Assistant Marshal Morales.

" 'Who else went with you?

" 'Here, but there no one else.

" 'Did you not meet Mr. Arbona there?

" 'No, Mr. Arbona was not there at the farm. Mr. Arbona was at his home.'

"On cross-examination at p. 64:

" 'Did he not object to your giving possession to Mr. Juan Arbona?

" 'No, sir. Don Juan came in the afternoon; after we had already accomplished the ejectment, the eviction, and afterwards we delivered possession to don Juan by virtue of an order of the National City Bank.'

"We therefore think that the essential allegation of the complaint in this case has not been proved, that is, that, 'on June 13, 1936, defendant herein, Juan Arbona Reynes, taking advantage of the fact that none of the plaintiffs was at the farm, went there personally, together with José R. Rodríguez, who at that time was Marshal of this court and was known as such in that place, and under threats of force and violence, said Arbona, aided by said Marshal, took possession or material occupancy of the whole property, etc.

It does not appear from the evidence that co-defendant Juan Arbona Reynes, by himself or acting in the name of the National City Bank, took part in the acts performed by the Marshal, since the latter at all times acted without the intervention of Arbona or by direct orders of the National City Bank, which is not a party defendant in this action. Considering this, and the fact that Arbona was already in possession of at least a part of the property prior to June 13, 1936, we feel bound to reach the conclusion that the legal questions raised by the plaintiffs as to whether or not the Marshal had a legal order in cases No. 9382 and 9383, *supra*, to give possession of the property to the National City Bank, can not be decided in this case, precisely because said institution is not a party herein and for that reason we wish to state that nothing in the foregoing recital should be construed in the sense that we are deciding whether or not the Marshal was authorized to act in the manner in which he did in connection with the bank.

"As to co-defendant G. Llinás & Co., *S. en C.*, since it acquired part of the property by purchase from Mr. Arbona, who was the owner, as appears from the registry of property, we have not connected said partnership with the facts which took place on June 13, 1936.

"For the reasons stated, the court is of the opinion that the complaint and the complementary complaint herein should be dismissed with costs, but without attorney's fees."

The conclusions of the lower court are, in our opinion, contrary to the proceedings and the evidence. In the fourth averment of the complaint, plaintiffs stated as follows:

"We further allege that said ouster was carried out in the following manner. First, on a day subsequent to May 22, but prior to June 13, 1936, on which day the plaintiffs had gone temporarily to Ponce, . . . Mr. Ramiro Lázaro and the Marshal of this court went personally to the farm; and then and there, according to information and belief which plaintiffs have now received, said Lázaro, acting on behalf of the defendant herein, Juan Arbona, in order that the latter should take possession of the property, requested the employees of the plaintiffs on the property to vacate the same, telling them that said property did not belong to the plaintiffs any more. And subsequently, on said June 13, 1936, defendant herein, Juan Arbona Reynes, taking advantage of the fact that on that day none of the plaintiffs were at the farm, went personally, together with José R. Rodrí-

guez, who was at that time Marshal of this court *. . .; and under threats of force and violence said Arbona, aided by said Marshal, took possession or material occupancy of the whole property . . .; all this without the consent and against the will of the plaintiffs, their agents and employees of the property and over their objection; and both, maliciously simulating that they had authority and an order of the district court and that they acted pursuant to that authority, compelled plaintiffs' employees to leave the property, take out the cattle which was grazing on the land, and threw out into the street the furniture and linen which was there as a homestead of said plaintiffs, etc.''

It is evident that the plaintiffs complained of two different acts of ousters, both performed by defendant Arbona, aided by the Marshal of the district court. In the first, the defendant took possession of part of the property. In the second, the Marshal ousted plaintiffs' employees from the property, leaving the defendant in possession of the whole property.

The evidence adduced by the plaintiffs in support of the foregoing allegations showed beyond any doubt that the plaintiffs were in possession of the property from 1928 until June 13, 1936, on which day they were ousted by the Marshal of the court; that while the plaintiffs were in Ponce, the farm and the house were in charge of a young superintendent named Rafael Angel Dávila; that the house on the farm was the only domicile of the plaintiffs; that the latter, on going to Ponce, did not do so with the intention of abandoning the farm; and that the man in charge of the farm objected to and complained of the act performed there by the Marshal and by the defendant.

José Ramón Rodríguez, Marshal of the District Court of Ponce, testified that on June 13, 1936, he was requested by Mr. Lázaro of the National City Bank to go to the farm and deliver possession thereof to Mr. Arbona; that while he was going to the farm, he met the man in charge of the same and told him of his mission; that while they were taking the

furniture out, Dávila, the man in charge and representative of the Llorens, arrived and objected and became irritated to the point that he, the Marshal sent for a police corporal; that everything he did there was "by virtue of an order of a public sale which order decreed the sale at public auction of the properties"; that he believed in good faith that the order for the public sale included the order of possession of the property.

Having established the fact that the plaintiffs were in possession of the property at the time they were deprived of said possession by the Marshal, we must now determine whether said officer was legally authorized to act in the manner he did.

 Section 2 of an "Act Relating to Judgments and the Manner of Satisfying Them," Code of Civil Procedure, 1933 ed., p. 123, provides:

"Section 2.—When any order foreclosing a lien upon immovable property is made in a suit having for its object the foreclosure of such lien; in any court having jurisdiction, such order shall have all the force and effect of a writ of possession, as between parties to such suit of foreclosure and any person claiming under the defendand to such suit by any right acquired pending such suit, *and the court shall so direct in the judgment providing for the issuance of such order, and the marshal or other officer executing such order of sale, shall proceed by virtue of said order to place the purchaser of the property sold under the same in possession thereof within thirty days after the day of sale.*" (Italics ours.)

It is unquestionable that the defendant Arbona, as purchaser of the undivided interests adjudicated to the National City Bank by virtue of the public sale, had the same right as the bank to be placed in possession of the property sold. Neither the foreclosing bank nor its assignee, defendant herein, was entitled, by the mere existence of the public sale and adjudication, to trespass on the property of the plaintiffs as owners of the property. That possession could only be acquired by the foreclosing bank or its assignee by virtue

of an order issued by the same court which decreed the public sale pursuant to the provisions of the said section of the Act Relating to Judgments and the Manner of Satisfying them.

Could the Marshal of the district court, because of the mere fact that he was a Marshal and without an express authorization from the district court, eject the plaintiffs from the property and put defendant in possession thereof? The precise language of the above-copied provision compels us to answer in the negative. In order that the Marshal could place the purchaser of a property sold by him at public sale to satisfy the amount of a mortgage in possession thereof, it had to be provided in the judgment of the court which ordered the sale of the property that the order of sale "shall have all the force and effect of a writ of possession," and further, said court had to issue an order to the Marshal or other officer executing such order of sale to proceed by virtue thereof to place the purchaser in possession of the property within thirty days after the public sale.

We have already seen that in the orders issued in the foreclosure proceedings instituted against the plaintiffs it was only provided that payment from the mortgage debtors be requested, and that they be informed that in default of payment within 30 days, the mortgaged properties would be sold at public auction.

The defendants and appellees allege that the law does not require that in the final judgment or order of execution issued in a mortgage foreclosure proceeding, an order has to be included authorizing the marshal to place the purchaser in possession of the property within 30 days from the day of sale. They ground their arguments on the conflict which they allege exists between the Spanish and the English text of §2 of the Act relating to Judgments and the Manner of Satisfying them. They further allege that the public sale of March 4, 1936, did not entitle the mortgagor to possession,

because by virtue of the same they acquired a little less than one-half of the undivided interests in the property, and that the bank acquired the right to take possession of the whole property by virtue of the public sale of May 22, 1936, when it acquired other undivided interests which gave it an absolute majority and therefore the right to manage the same.

The alleged conflict is more apparent than real. The English text of §2, after providing that the order for the foreclosure of a mortgage "shall have all the force and effect of a writ of possession," further provides in a mandatory fashion that "the court shall so direct in the judgment providing for the issuance of such order." From the arguments of appellees themselves, it clearly appears that the court is bound to include in its judgment an order expressly authorizing the Marshal to place the purchaser in possession of the property sold at public auction. In neither of the judgments rendered in action No. 9382 and No. 9383 brought against the appellants was the writ of possession included. Undoubtedly the lower court felt justified in not including this in the said order for the first public sale, held on March 4, 1936, since by virtue thereof the bank only acquired less than one-half of the property. What reason did the court have for not including it in the judgment ordering the two public sales of May 22, 1936? How can it be conceived that the Marshal is vested with power to determine in which case he should place the purchaser in possession of the property and in which case he should not do so? The Marshal, as a ministerial or an executive officer, should confine himself to complying strictly with the orders of the court, without stopping to consider whether the grounds on which the order is based are well-founded or not. *Successors of Villamil & Co.* v. *Solá,* 32 P.R.R. 496; *Sánchez et al.* v. *Cuevas Zequeira,* 23 P.R.R. 47. In the case at bar the Marshal acted without

lawful authority in giving possession of the property to the defendant Arbona and in evicting the plaintiff therefrom, and his act constituted an unlawful act of deprivation of the possession which the plaintiffs held. The lower court erred in not granting the interdict sought.

We make it clear that we hold that the marshal is not authorized, by the mere fact of his office, to place the purchaser in possession of the property sold at public sale. He must be expressly ordered by the court to do so. That order may be included in the foreclosure of the mortgage of the property, pursuant to §2, *supra,* or issued separately, before or after the public sale, on motion of the interested party. In the case at bar it was not done in either manner.

From the record it appears that a suit in Equity, No. 2329, was prosecuted in the District Court of the United States for Puerto Rico, which had been originally instituted in the District Court of Ponce by the plaintiffs herein and others against the defendants herein and then removed by the defendants to the Federal court; and that said case was terminated by judgments of January 4, 1941, and May 15, 1942, wherein the complaints were dismissed.

There is no showing as to the rights that the defendants herein might have acquired by virtue of the proceedings instituted in the District Court of the United States for Puerto Rico in said Equity case, No. 2329. Therefore, the judgment which we will render will be subordinate to, and shall not affect in any manner whatsoever, the right of possession which the defendants herein may have acquired by virtue of the order or decree of the Federal court.

The judgment appealed from must be reversed and the case remanded to the lower court for further proceedings not inconsistent with this opinion.

Mr. Justice Todd, Jr., did not participate herein.